UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHAWN DALE NANEZ,

                Plaintiff,

    v.

PENELOPE SAPP, *et al.*,

                Defendants.

CASE NO. 3:24-cv-05293-RSL-GJL

REPORT AND RECOMMENDATION

Noting Date: **September 4, 2024**

       The District Court has referred this prisoner civil rights action to United States Magistrate Judge Grady J. Leupold. Currently before the Court is a Motion to Dismiss the Second Amended Complaint filed by Defendants Penelope Sapp, Genie Elton, K. Hall, S. Billingsley, R. Fitzwater, G. Krause, T. Gibson (collectively "Defendants"). Dkt. 22.

       Upon review, this Court concludes Defendants have persuasively argued that Plaintiff failed to state a cognizable official claim against any Defendant in their official capacity. However, the Court finds Plaintiff has adequately pled individual capacity claims against the Defendants at this stage and these allegations should proceed.

REPORT AND RECOMMENDATION - 1

1   Accordingly, the undersigned recommends Defendants' Motion to Dismiss (Dkt. 22) be
2   **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff Shawn Dale Nanez, who is currently incarcerated at Monroe Correctional Complex-SOU, initiated this prisoner civil rights action concerning his pretrial detention at Kitsap County Jail ("KCJ"). Dkt. 7. Plaintiff organizes his claims into two counts alleging violations of the Fourteenth Amendment to the United States Constitution. *Id.* at 10–12.

### A.  Plaintiff was Allegedly Left in a Crisis Cell as Punishment

Count One arises out of events occurring in June 2023 and is brought against the following Kitsap County employees in their individual and official capacities: Defendants Sapp, Elton, Hall, and Billingsley (collectively, "Count One Defendants"). *Id.* 10–11, 15–16.

Beginning at some point in June 2023, Plaintiff states he was housed in a "crisis cell for suicide watch" at KCJ. *Id.* at 15. Though he does not specify when or by whom, it appears Plaintiff was informed he would be transferred from the crisis cell to administrative segregation. *Id.* at 10, 15. Plaintiff objected, allegedly telling KCJ staff that the transfer was not medically necessary as he was "cleared…from suicide watch [and had] no infractions." *Id.* at 10.

The day after he objected, Plaintiff alleges that Defendant Billingsley told him his time in the crisis cell was extended until June 28, 2023, as punishment for refusing to transfer. *Id.* at 15. Plaintiff alleges that the decision to extend his confinement in the crisis cell for more than a week was made by a disciplinary team comprised of the Count One Defendants. *Id.*

According to Plaintiff, the additional confinement in the crisis cell was intended to cause "deliberate [and] wanton pain [and] suffering"; he experienced sensory deprivation and was not permitted to shower, use the telephone, engage in recreation, or sleep on a mattress. *Id.* at 15–16.

REPORT AND RECOMMENDATION - 2

**B.    Plaintiff was Allegedly Permitted to Engage in Self-Harm Despite Requesting Help**

Count Two is brought against the following Kitsap County employees in their individual and official capacities: Defendants Fitzwater, Krause, and Gibson (collectively, "Count Two Defendants"). *Id.* at 11–12, 16–18.

On the morning of September 2, 2023, Plaintiff alleges that he used an emergency call button in his cell to inform KCJ staff that he "needed to go to crisis before [he] hurt [him]self." *Id.* at 16. Defendant Gibson, who received this call, allegedly instructed Plaintiff to "talk to your pod officer." *Id*. Approximately fifteen minutes later, Defendant Krause came to Plaintiff's unit and said, "I got a call from control saying you want to hurt yourself is that true?" *Id.* After confirming this was true, Plaintiff allegedly asked if he could be moved to a crisis cell to prevent self-ham. *Id.* Defendant Krause then left to notify the sergeant, allegedly ignoring Plaintiff's pleas that his need was urgent. *Id.* Immediately after Defendant Kraus left, Plaintiff alleges that he "ingested a pen to self-harm." *Id.*

About twenty minutes after Plaintiff swallowed the pen, Plaintiff alleges that Defendant Kraus returned to inform him that the sergeant (Defendant Fitzwater) had been notified. *Id.* Plaintiff then told the Defendant that he ingested a pen and again requested to go to crisis. *Id.* Defendant Kraus allegedly walked away without responding. *Id.*

Approximately an hour after Plaintiff first made his emergency call, Defendant Kraus returned to Plaintiff's area to conduct a routine walkthrough. *Id.* By this time, Plaintiff alleges that he swallowed a spoon to cause himself even more harm. *Id.* Plaintiff says he informed the Defendant that he engaged in further self-harm but alleges that Defendant Krause only repeated his prior statement that Defendant Fitzwater was aware of the situation.

REPORT AND RECOMMENDATION - 3

Although he was allegedly informed that Plaintiff reported a risk of self-harm much earlier that day, Plaintiff states that Defendant Fitzwater did not come to check on him until 8:00 p.m. *Id.* at 17. When Defendant Fitzwater eventually arrived at his cell, Plaintiff alleges that he immediately informed him about the self-harm. *Id.* Defendant Fitzwater then left Plaintiff alone in his cell, apparently to notify KCJ medical staff. *Id.* About thirty minutes after Defendant Fitzwater left, a KCJ nurse came to Plaintiff's cell and assessed his condition. *Id.* The nurse determined Plaintiff needed medical attention, so he was transported to a nearby ER. *Id.*

Plaintiff alleges that the items he ingested to self-harm needed to be surgically removed and that he was hospitalized for four days following his surgery due to "near death complications." *Id.* Plaintiff asserts that his injuries could have been avoided had the Count Two Defendants responded appropriately to his requests for help by moving him to a crisis cell before he could engage in self-harm. *Id.* at 17–18.

C. **Instant Action**

After exhausting the administrative remedies available at KCJ, Plaintiff filed the instant action suing the Defendants in both their individual and official capacities. *Id.* at 2, 6, 25–32. Defendants now seek dismissal of the entire Complaint for failure to state a claim. Dkt. 22. Plaintiff responded in opposition to the Motion to Dismiss and Defendants replied in support. Dkts. 23 and 24. As such, Defendants' Motion is now fully briefed and ripe for consideration.

D. **Plaintiff Improperly Filed Discovery Requests with the Court**

Before turning to the Motion to Dismiss, the Court briefly addresses apparent discovery requests made in Plaintiff's Response in opposition to the Motion to Dismiss. Dkt. 23. In his response, Plaintiff states that he has no way of obtaining copies of various documents related to this case and requests that the Court direct Defendants to provide copies of grievances, kiosk

REPORT AND RECOMMENDATION - 4

messages, behavior logs, investigation reports, housing assignments, medical records, crisis cell logs. *Id.* at 5. This request for discovery is improperly filed with the Court.

As such, Plaintiff is **ADVISED** that, under Federal Rule of Civil Procedure 34(a)(1), "[a] party may serve on any other party a request" for production of various materials relevant to his case; however, to properly serve his discovery requests, Plaintiff must mail his discovery requests to Defendants' counsel at the addresses listed on the docket. Plaintiff may not file any discovery requests and responses in this action (1) "until they are used in the proceedings" or (2) "the court orders filing." Local Rules W.D. Wash. LCR 5. And, as explained in a separate Order, the undersigned will not issue a scheduling order establishing the deadlines for discovery until after the District Court has ruled on this Report and Recommendation. Dkt. 26. Thus, Plaintiff should not mail any discovery requests to Defendants before that date.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must raise the right to relief beyond the speculative level and must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

On a motion to dismiss, courts accept as true a plaintiff's well-pled factual allegations and construe all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001). Furthermore, a *pro se*

REPORT AND RECOMMENDATION - 5

complaint must be "liberally construed" and held "to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 & n.4 (9th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, the operative complaint must include more than conclusory allegations and, instead, put forth specific, plausible facts to support his constitutional claims against each defendant. *See Iqbal*, 556 U.S. at 678–83.

### III.    DISCUSSION

Defendants raise three primary arguments in their Motion to Dismiss. Defendants first argue that Plaintiff's individual and official capacity claims in both Counts should be dismissed because his allegations, even if true, do not amount to violations of the Fourteenth Amendment. Dkt. 22 at 5–8; Dkt. 25 at 2. Next, Defendants argues that Plaintiff's individual capacity claims in Count One should also be dismissed because he does not plausibly allege personal participation by any Count One Defendant. Dkt. 22 at 4–5; Dkt. 25 at 1–2. Finally, Defendants argue that Plaintiff's official capacity claims in both Counts should be dismissed because he does attribute any of his injuries to an official Kitsap County policy or practice. Dkt. 22 at 8–10; Dkt. 25 at 3. For the reasons below, the Court agrees with Defendants' final argument regarding Plaintiff's official capacity claims but disagrees with their remaining arguments.

**A.    Plaintiff Plausibly Alleges Constitutional Violations in Both Counts**

To avoid dismissal of his 42 U.S.C. § 1983 claims, Plaintiff must allege that he suffered a violation of rights protected by the Constitution or created by federal statute, and that the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In

REPORT AND RECOMMENDATION - 6

simplified terms, a § 1983 claim has two basic elements (1) a constitutional violation, which is (2) caused by a defendant who is capable of being sued under § 1983.

On step one, Plaintiff alleges two separate violations of his Fourteenth Amendment rights arising out of certain conditions of his pretrial confinement. Under the Fourteenth Amendment, "[j]ail officials have a duty to ensure that [pretrial] detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018); *see also Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 924 n.2 (9th Cir. 2017) ("The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual punishment claims of pretrial detainees.").

    1. <u>Plaintiff plausibly alleges a constitutional violation in Count One</u>

With respect to his conditions of confinement claim in Count One, the Court considers whether the conditions alleged in the Complaint amount to punishment, meaning that the alleged conditions cause harm significantly exceeding the typical discomforts of incarceration. *See Doe v. Kelly*, 878 F.3d 710, 714, 720 (9th Cir. 2017). Because prison and jail officials must have means of protecting and controlling inmates at risk of self-harm, temporary placement of prisoners in "safety cells" to prevent injury—even where the cells are small, dark, and "scary"— do not violate the Constitution. *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1313–15 (9th Cir. 1995) (collecting cases involving prisoners and pretrial detainees). On the other hand, prolonged detention in conditions lacking certain life necessities without adequate justification, may rise to the level of a constitutional violation. *See, e.g.*, *Luyster v. Bishop,* No. 3:18-cv-6022-BHS-TLF, 2020 WL 4059890, at *12–13 (W.D. Wash. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 4058971 (W.D. Wash. July 20, 2020) (plaintiff stated a cognizable claim by alleging he was left in a feces-covered cell without soap or other cleaning products for ten days).

In Count One, Plaintiff alleges he was forced to remain in the crisis cell for more than a week after the initial justification expired. During that additional period of confinement, Plaintiff states the conditions in the crisis cell amounted to harm, explaining that he was subjected to sensory deprivation, denied access to a shower, was unable to use the phone or engage in recreation, and was forced to sleep on the floor. Dkt. 7 at 15. To support his allegations that the additional time in the crisis cell lacked justification, Plaintiff compares the stated reason for his extended stay (*i.e.* to punish him for refusing to leave) with KCJ policies prohibiting the use of crisis cells as punishment. *Id.* at 15, 36.

Plaintiff further alleges that a mental health professional at KCJ did not think it was appropriate for him to remain in the crisis cell as punishment. *Id*. Construing these allegations liberally, Plaintiff has plausibly alleged that he was denied basic necessities without proper justification for a prolonged period. He has thus sufficiently pled a Fourteenth Amendment violation in Count One.

    2.    <u>Plaintiff also plausibly alleges a constitutional violation in Count Two</u>

With respect to his inadequate medical care claim in Count Two, the Ninth Circuit has explained that the "[t]he mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *See Gordon v. Cnty. Of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Rather, to state a claim based on inadequate medical care, a pretrial detainee must plausibly allege: (1) a defendant acted intentionally with respect to the provision of inadequate medical care, (2) the inadequacies in care put the pretrial detainee at substantial risk of suffering serious harm, (3) a reasonable official in the defendant's shoes would have appreciated the substantial risk of harm, (4) the defendant did not take reasonable available measures to abate or mitigate the risk of harm to the detainee, and (5) the defendant's

failure to take such measures caused the detainee's harm. *Id.* (citing *Castro v. Cnty. Of Los Angeles*, 833 F.3d 1060, 1070–71 (9th Cir. 2016)). A claim of inadequate medical care may be premised on allegations that a defendant denied, delayed, or interfered with the provision of adequate care. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (regarding analogous claims under the Eighth Amendment).

In Count Two, Plaintiff alleges that he was ignored for several hours after he informed each of the Count Two Defendants that he was at risk of self-harm. To support his theory that the Count Two Defendants did not take reasonable steps to mitigate his risk of harm, Plaintiff points to a KCJ policies regarding the use of crisis cells and other actions to prevent inmates from harming themselves. Dkt. 7 at 17–18, 33–41. He further supports this theory by describing a disapproving comment allegedly made by a KCJ nurse when she discovered that Plaintiff remained in his standard cell after engaging in self-harm. *Id.* at 17. Finally, Plaintiff states that the self-inflicted injuries that required surgical intervention and caused him to be hospitalized for several days could have been avoided by a prompt response to his requests to be moved to a crisis cell. *Id.* at 17–18. At this stage, Plaintiff's allegations are sufficient to state a cognizable claim in Count Two.

To the extent Defendants seek dismissal of Counts One and Two by arguing that their alleged actions were reasonable or otherwise justified, these arguments are ill-suited for the pleading stage where all reasonable inferences must be taken in Plaintiff's favor. Given the liberal construction afforded to *pro se* pleadings, the Court finds that Plaintiff has plausibly alleged constitutional violations in both Counts and thus satisfied step one of pleading cognizable § 1983 claims.

**B.     Plaintiff Only Attributes his Injuries to Defendants in their Individual Capacities**

Nevertheless, Plaintiff must still satisfy step two by attributing his alleged constitutional injuries to the appropriate Defendants. Plaintiff asserts that his constitutional injuries were caused by numerous county employees in both their individual and official capacities.

  1.  <u>Plaintiff sufficiently alleges personal participation by all Defendants</u>

To state a claim against a defendant in their individual capacities, a plaintiff in a § 1983 action must allege facts showing how the individually named defendants caused or personally participated in causing the harm alleged in the operative complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Supervisory personnel cannot be held liable for the actions of their subordinates under a theory of vicarious liability, meaning that supervisors are only liable for their own acts or failures to act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In his Complaint, Plaintiff alleges that each Count One Defendant was personally involved in making the alleged decision to extend his time in the crisis cell without adequate justification. Dkt. 7 at 15 (listing each Count One Defendant and stating they "all had a meeting [and] decided I was go[ing to] be punished for <u>NOT</u> moving.") (emphasis in original). These allegations do not, as Defendants argue, rely on a theory of vicarious liability. Dkt 22 at 5. While discovery may reveal that certain Count One Defendants has less influence over the disciplinary decision than others, this possibility does not prevent Plaintiff from stating a cognizable claim against each Count One Defendant at this early stage.

Although not disputed by Defendants, the Court also notes that Plaintiff alleges sufficient facts showing that each Count Two Defendant was personally aware that he was at risk of self-harm and that none took reasonable steps to mitigate that risk. *Id.* at 16–17. Thus, Plaintiff's allegations in Counts Two are also sufficient to show personal participation.

  2. <u>Plaintiff fails to attribute his injuries to any Defendant in their official capacity</u>

  Next, when a county employee is sued in their official capacity under § 1983, the real party in interest is the county itself. *Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985) (citing *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)). Thus, to state a claim against a county employee in their official capacity, a § 1983 plaintiff must identify a county policy or practice that was the moving force behind their alleged constitutional injury. *Bd. of the Cnty. Comm'rs of. Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694); *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1172 (9th Cir. 2021) ("To establish *Monell* [i.e., municipal or county] liability under § 1983, the constitutional violation must be caused by a municipality's policy, practice, or custom or be ordered by a policy-making official.").

  Here, Defendants are correct that Plaintiff fails to attribute his alleged injuries to a Kitsap County policy or custom in either Count. Instead, Plaintiff alleges that all Defendants *disregarded* and *acted contrary to* KCJ Policies. *Id.* at 15 (Count One) and 17 (Count Two). He has therefore failed to state a claim against any Defendant in their official capacities.

  Accordingly, Plaintiff should be permitted to proceed to discovery on his individual capacity claims in Counts One and Two, but his official capacity claims in both Counts should be dismissed for failure to state a claim.

### IV. CONCLUSION

  For the above stated reasons, Defendants' Motion to Dismiss (Dkt. 22) should be **GRANTED** with respect to Plaintiff's official capacity claims and **DENIED** with respect to his individual capacity claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **September 4, 2024**, as noted in the caption.

Dated this 20th day of August, 2024.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12